# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                               )
**THOMAS O. FLOCK, DENNIS K.**                 )
**THOMPSON, THOMAS H. GOODEN,**                )
**C. DOUGLAS HEISLER, WALTER A.**              )
**JOHNSON, and GAYLA S. KYLE,**                )
                                               )
      **Plaintiffs,**                 )
                                               )          **Civil Action No.**
      **v.**                         )          **14-13040-FDS**
                                               )
**UNITED STATES DEPARTMENT OF**                )
**TRANSPORTATION, FEDERAL**                    )
**MOTOR CARRIER SAFETY**                       )
**ADMINISTRATION, and**                        )
**UNITED STATES OF AMERICA,**                  )
                                               )
      **Defendants.**                 )
_____)

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This is a class action involving the allegedly unlawful release by the federal government of motor carrier driver safety violation reports. The plaintiffs, all of whom are motor carrier drivers, have brought suit against the United States, the United States Department of Transportation, and the Federal Motor Carrier Safety Administration ("FMCSA").

For many years, the FMSCA has maintained a database of information on the safety records of commercial motor carrier drivers as part of its Motor Carrier Management Information System ("MCMIS"). In 2005, Congress enacted a new statute, codified at 49 U.S.C. § 31150, stating that the FMSCA "shall provide" to prospective employers of motor carrier drivers "electronic access" to three specific categories of reports. The statute requires, however,

that the applicant-driver provide written consent.  Beginning in 2010, the FMSCA implemented

new regulations that established a Pre-Employment Screening Program ("PSP").  Under the PSP,

prospective employers can obtain electronic access to data from the MCMIS system.  The

available data is broader than the three categories identified in § 31150.  The PSP likewise

requires driver consent before dissemination of the information.

The plaintiff drivers have filed suit, in substance alleging that the dissemination of that

additional information violates their rights under the Privacy Act, 5 U.S.C. § 552a.

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of

subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  For the

following reasons, the motion to dismiss will be granted.

## I.      Background

### A.      The FMCSA

The FMCSA is an "administration of the Department of Transportation" that is charged

with considering "the assignment and maintenance of safety as the highest priority, recognizing

the clear intent, encouragement, and dedication of Congress to the furtherance of the highest

degree of safety in motor carrier transportation."  49 U.S.C. § 113.  It regulates the activities of

commercial motor vehicle operators, among other ways, through promulgation of the Federal

Motor Carrier Safety Regulations ("FMCSR") in the Code of Federal Regulations.  *See* 49

C.F.R. §§ 350-99.  The FMCSR are enforced primarily by individual states, which in return for

federal grants under the Motor Carrier Safety Assistance Program ("MCSAP"), adopt the

regulations and enforce them under state law.  *See* 49 U.S.C. § 31102; 49 C.F.R. § 350; *see also*

*National Tank Truck Carriers, Inc. v. Federal Highway Admin.*, 170 F.3d 203, 205 (D.C. Cir.

1999) (noting that "the individual states are the primary enforcers of the highway safety

regulations at roadside inspection").  States accepting federal grants under MCSAP are required

to collect and report motor carrier safety data to the FMCSA.  *See* 49 U.S.C. § 31102(b)(2)(Q);

49 C.F.R. § 350.201.

States conduct roadside inspections and other activities and report the motor carrier safety

data collected during such activities to FMCSA.  49 U.S.C. § 31102(b)(2), 49 C.F.R. part 350.

During roadside inspections, state officers are required to document any violations of the

FMCSR or related state laws.  Details of the roadside inspections, including any violations and

the identity of the motor carrier, the driver, and the commercial motor vehicle, are recorded on a

standard roadside inspection form.  *See* 49 U.S.C. § 31102(b)(2)(H), 49 C.F.R. § 350.201(h) and

(i).

The information collected by the states is electronically submitted to the Motor Carrier

Management Information System ("MCMIS"), a database operated and maintained by the

FMCSA.  *See* 65 Fed. Reg. 83124 (Dec. 29, 2000) (citing 49 U.S.C. §§ 502, 504, 506, 508 and

49 C.F.R. § 1.73).  MCMIS thus contains, among other things, "information on commercial truck

drivers' safety records, such as accident reports and other safety violations."  *Weaver v. Federal*

*Motor Carrier Safety Admin.*, 744 F.3d 142, 143 (D.C. Cir. 2014); (Compl. ¶ 1); *see* 49 U.S.C.

§ 31106.  The MCMIS database has been maintained by the FMCSA since at least 2000, and a

similar data system was maintained by FMCSA's predecessor agency, the Federal Highway

Administration, for many years prior to that date.  *See* 65 Fed. Reg. 83124.

### B.    The Privacy Act

The Privacy Act of 1974, codified in part at 5 U.S.C. § 552a, contains "a comprehensive

and detailed set of requirements for the management of confidential records held by Executive

Branch agencies."  *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1446 (2012).  Subject to a variety of

exceptions, the Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency . . . ."

There are two exceptions that are potentially relevant here.  The first is that an agency may disclose a record "pursuant to a written request by, or with the prior consent of, the individual to whom the record pertains . . . ." 5 U.S.C. § 552a(b).  The second is that an agency may disclose a record contained in a system of records if the record would be for a "routine use," which means, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected . . . ." *Id.* §§ 552a(b)(3), 552a(a)(7).

According to the Privacy Act, "[e]ach agency that maintains a system of records shall . . . maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President . . . ." *Id.* § 552a(e)(1).  In addition, "[e]ach agency that maintains a system of records shall . . . publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records . . . ." *Id.* § 552a(e)(4). The Act defines "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5).  For information to be disclosed under the "routine use" exception, an agency must publish in its system of records notice "each routine use of the records . . . including the categories of users and the purpose of such use." *Id.* § 552a(e)(4)(D).

The Privacy Act authorizes individuals to bring civil actions against an agency whenever

that agency "fails to comply" with the Act's requirements "in such a way as to have an adverse

effect on an individual." *Id.* § 552a(g)(1)(D). For violations "in which the court determines that

the agency acted in a manner which was intentional or willful," individuals may recover the sum

of "actual damages . . . , but in no case shall a person entitled to recovery receive less than the

sum of $1,000," and costs and reasonable attorney fees. *Id.* § 552a(g)(4). The term "actual

damages" does not include damages for mental or emotional distress. *F.A.A. v. Cooper*, 132 S.

Ct. at 1446.

      C.      **The Enactment of Section 31150**

     The government contends that prior to 2005, a prospective employer of a motor carrier

driver who sought information about the safety record of that driver could obtain access to the

MCMIS database in one of two ways. First, the employer could obtain the driver's written

consent and transmit that document to the FMCSA. Because the Privacy Act of 1974 permits the

release of such information with the relevant person's consent, the FCMSA would then provide

the requested information. *See* 5 U.S.C. § 552a(b). Second, the employer could file a request

with the FMCSA under the Freedom of Information Act, 5 U.S.C. § 552.

     In 2005, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation

Equity Act. Pub. L. 109-59, 119 Stat. 1728 (Aug. 10, 2005). Part of the new statute, now

codified at 49 U.S.C. § 31150, mandated the creation of an electronic system to provide certain

types of information on motor carrier drivers to prospective employers. The apparent purpose of

the statute was to establish a more expeditious, and perhaps more reliable, method for employers

to obtain background information on prospective employees.

     Subsection (a) of the statute provides that the FMCSA "shall provide persons conducting

preemployment screening services for the motor carrier industry electronic access to the

following reports contained in the [MCMIS]:

 (1) Commercial motor vehicle accident reports.

 (2) Inspection reports that contain no driver-related safety violations.

 (3) Serious driver-related safety violation inspection reports."

49 U.S.C. § 31150(a).

 Subsection (b) provides:  "Before providing a person access to [MCMIS] under subsection (a), the [FMCSA] shall---

 (1) ensure that any information that is released to such person will be in accordance with the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) and all other applicable Federal law;

 (2) ensure that such person will not conduct a screening without the operator-applicant's written consent;

 (3) ensure that any information that is released to such person will not be released to any person or entity, other than the motor carrier requesting the screening services or the operator-applicant, unless expressly required by law; and

 (4) provide a procedure for the operator-applicant to correct inaccurate information in [MCMIS] in a timely manner."

49 U.S.C. § 31150(b).

 Subsection (c) provides:  "The process for providing access to [MCMIS] shall be designed to assist the motor carrier industry in assessing an individual operator's crash and serious safety violation inspection history as a preemployment condition.  Use of the process shall not be mandatory and may only be used during the preemployment assessment of an operator-applicant."  49 U.S.C. § 31150(c).  And subsection (d) defines "serious driver-related

6

violation [sic]" as "a violation by an operator of a commercial motor vehicle that the Secretary determines will result in the operator being prohibited from continuing to operate a commercial motor vehicle until the violation is corrected."  49 U.S.C. § 31150(d).[1]

### D.        The Pre-Employment Screening Program

On March 8, 2010, the FMCSA issued a System of Records Notice ("SORN") in which it proposed "to establish a system of records under the Privacy Act . . . for its Pre-Employment Screening Program (PSP), as required by 49 U.S.C. § 31150."  75 Fed. Reg. 10554, 2010 WL 752157 (Mar. 8, 2010).[2]  The notice stated that the "system of records will make crash and inspection data about commercial motor vehicle (CMV) drivers rapidly available to CMV drivers (operator-applicants) and prospective employers of those drivers (motor carriers), via a secure Internet site, as an alternative to requiring them to submit a Freedom of Information Act (FOIA) request or Privacy Act request to FMCSA for the data."  *Id.*  The notice explained that payment of a fee will be required to access the PSP, but noted that "[m]otor carriers may continue to request the information from FMCSA under FOIA, and operator-applicants may continue to receive their own safety performance data free of charge by submitting a Privacy Act request to FMCSA."  *Id.*  According to the March 8 notice, the PSP would specifically contain "a current MCMIS data extract containing the most recent five (5) years' crash data and the most recent three (3) years' inspection information."  *Id.*

---

[1] Section (a) of the statute refers to "Serious driver-related safety violation inspection reports."  49 U.S.C. § 31150(a).  The caption to section (d) reads "Serious driver-related safety violation defined."  *Id.* § 31150(d).  The definition itself, however, is of the term "serious driver-related violation," thus omitting the word "safety."  *Id.* Neither side has suggested that the omission is meaningful in this context.

[2] In the SORN to establish the PSP as a system of records under the Privacy Act, the database is referred to as the "Pre-Employment Screening Program."  75 Fed. Reg. 10554.  However, in the SORN to modify MCMIS, the PSP is referred to as the "Pre-Employment Screening System."  74 FR 66391-04.  It does not appear that the difference has any significance.  Throughout this memorandum and order, the Court will use the acronym "PSP" to refer to the Pre-Employment Screening Program.

In a section entitled "Routine Uses of Records Maintained in the System, Including Categories of Users and Purposes of Use," the notice stated that "[a]uthorized motor carriers may access an individual operator-applicant's crash and inspection data in PSP with the operator-applicant's written consent and payment of a fee." *Id.*[3] The SORN had an effective date of April 7, 2010. *Id.*

On July 19, 2012, the FMCSA issued a Federal Register Notice concerning the modification of the PSP system of records, to be effective August 21, 2012. 77 Fed. Reg. 42548, 2012 WL 2920621 (July 19, 2012). According to the notice, the "record displays a snapshot in time, based on the most recent MCMIS data extract loaded into the PSP system." *Id.* That record "contains the most recent five years of crash data and the most recent three years of roadside inspection data, including serious safety violations for an individual driver." *Id.* The purpose of the database is to "satisfy requirements mandated by Congress" in 49 U.S.C. § 31150 and to "improve the quality of safety data and help employers make more informed decisions when hiring commercial drivers." *Id.* In the 2012 modification, the routine uses were "updated to permit disclosure of PSP records to industry service providers directly involved in the hiring

---

[3] On April 14, 2010, FMCSA published a Privacy Impact Assessment covering its PSP. (Compl. ¶ 38). The Privacy Impact Assessment states that "FMCSA provides the PSP contractor with an updated MCMIS data extract containing driver crash data from the previous five (5) years and inspection data from the previous three (3) years." (Pl. Mem. Ex. B (2010 Privacy Impact Assessment at 2 (Apr. 14, 2010), http://www.dot.gov/citizens/privacy/pia-pre-employment-screening-program-psp). In addition, the Privacy Impact Assessment states:

> In accordance with 49 U.S.C. § 31150(a), the CMV *driver safety information extracted from MCMIS* and made available for pre-employment screening *comes from the following reports*: commercial motor vehicle accident reports; inspection reports that contain no driver-related safety violation; and *serious driver-related safety violation inspection reports*.

(Pl. Mem. Ex. B (2010 Privacy Impact Assessment at 2 (Apr. 14, 2010), http://www.dot.gov/citizens/privacy/pia-pre-employment-screening-program-psp) (emphasis added); *see also* Pl. Mem. Ex. C (2012 Privacy Impact Assessment at 4, http://www.dot.gov/sites/dot.gov/files/docs/FMCSA_PSP_PIA_Final.pdf)).

of commercial motor vehicle (CMV) drivers on behalf of motor carriers and/or CMV drivers."

*Id.*  The modification notes that "[t]he system owner information has been modified to include

only contact information for the PSP system of records and no longer includes information for

the MCMIS and Freedom of Information Act (FOIA) systems, which are separate and distinct

system of records."  *Id.*

To access the PSP system, drivers and motor carriers pay a $10 fee per report.  (Compl.

¶ 43).  However, as noted in the March 8 notice, "[m]otor carriers may continue to request the

information from FMCSA under FOIA and operator-applicants may continue to receive their

own safety performance data free of charge by submitting a Privacy Act request to FMCSA."  75

Fed. Reg. at 10555.

The parties appear to agree that by accessing the PSP system, prospective employers can

obtain, among other things, inspection reports that contain non-serious driver-related safety

violations.  An example of a "serious" driver-related safety violation is the use of alcohol.  *See*

49 C.F.R. § 392.5.  Examples of non-serious driver-related safety violations include speeding

and failing to wear a seat belt.  Examples of non-driver-related safety violations include

excessive weight and improper vehicle registration.

###    E.    Consent Forms

The parties appear to agree that the written consent of the relevant driver is required to

access information on the system.  The PSP is administered by an independent contractor.  In

July 2012, that contractor implemented a written consent form for all PSP account holders.

Although written consent was always required prior to a PSP release of records, the written

consent form apparently represented the first time that FMCSA mandated the form of the

document.  The mandatory written consent form provides that prospective employers "cannot

obtain background reports from FMCSA unless you [that is, the driver] consent in writing." (Pl. Mem. Ex. A). The form once executed authorizes prospective employers "to access the FMCSA Pre-Employment Screening Program (PSP) system to seek information regarding . . . commercial driving safety record and information regarding . . . safety inspection history." (*Id.*). The form states, "I understand that I am consenting to the release of safety performance including crash data from the previous five (5) years and inspection history from the previous three (3) years." (*Id.*). Drivers who sign the form acknowledge that they "have read the above Notice Regarding Background Reports provided to [them] by Prospective Employer and [they] understand that if [they] sign this consent form, Prospective Employer may obtain a report of [their] crash and inspection history." (*Id.*). The form states that if prospective employers use "any information [they] obtain[] from FMCSA in a decision to not hire [a driver] or to make any other adverse employment decision regarding [him or her], the [p]rospective [e]mployer will provide [him or her] with a copy of the report upon which its decision was based . . . ." (*Id.*).

### F.    **The Present Case**

Plaintiffs Thomas Flock, Dennis K. Thompson, Thomas H. Gooden, C. Douglas Heisler, Walter A. Johnson, and Gayla S. Kyle are "professional commercial vehicle operators." (Compl. ¶ 7). They allege that their "driving activities have been the subject of reports unlawfully released for dissemination" by FMCSA under the PSP "within a two-year period immediately prior to the filing of this complaint." (*Id.*). The complaint alleges that FMCSA "has prepared and made available for dissemination to potential employers" of plaintiffs "one or more PSP reports that include references" to certain alleged driver-related violations. (*Id.* ¶¶ 23-28). It further alleges that the "FMCSA has disparaged" plaintiffs' "qualifications for employment as . . . commercial motor vehicle driver[s] in a manner not authorized by law." (*Id.*). According

to the complaint, the disparagement of plaintiffs' "qualifications as . . . commercial motor vehicle operators ha[ve] had . . . negative economic or pecuniary impact[s] on [their] ability[ies] to earn . . . living[s] as commercial motor vehicle" operators.  (*Id.*).

The complaint also alleges that the "only avenue available to [p]laintiff[s] . . . to acquire current and accurate information with respect to FMCSA's unlawful conduct is to purchase . . . cop[ies] of [their] PSP report[s] from [d]efendant."  (*Id.*).  It alleges that plaintiffs are required to pay a fee of $10 . . . each time they seek to gain access to current copies of their PSP reports.  (*Id.*).

The complaint thus alleges economic injury when drivers are forced to pay a fee of $10 in order to acquire a copy of the PSP report.  According to the complaint, FOIA is not an adequate substitute for the PSP because FOIA does not provide drivers with current and accurate information.  The complaint further alleges economic injury by alleging that the unlawful dissemination of reports by the FMCSA diminishes the economic value of the services of individual driver candidates for employment.

### G.     Procedural Background

Plaintiffs filed the complaint in this action on July 18, 2014.  They filed the claim on behalf of themselves and a class "consisting of all individuals in the United States for whom FMCSA has collected, maintained and transmitted for dissemination under the [PSP] inspection reports that contain references to alleged safety violations not determined by the Secretary of Transportation to be serious driver-related safety violations."  (Compl. ¶ 54).  The complaint alleges a single claim under 5 U.S.C. § 522a(g)(1)(D) for violation of the Privacy Act based on the unauthorized dissemination of inspection reports under defendants' PSP program.  (*Id.* ¶¶ 61-65).

Defendants have moved to dismiss the complaint on the grounds that it fails to allege (1) an injury sufficient to establish standing to sue, (2) an actionable violation of the Privacy Act, and (3) actual damages as required by the Privacy Act.  Because the Court finds that the complaint does not state a cause of action for violation of the Privacy Act, it will not reach the third issue.

## II.    Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

## III.    Analysis

### A.    Whether Plaintiffs Have Standing

Standing is a threshold question in every case; "[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case."

*United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992).  To satisfy the case-or-controversy requirement of Article III of the United States Constitution, plaintiffs bear the burden of establishing that they (1) have suffered an "injury-in-fact," (2) that the injury is "'fairly traceable' to the actions of the defendant[s]," and (3) that the injury will likely be redressed by a favorable decision.  *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  These elements must be proved "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.

An "injury-in-fact" "is defined as 'an invasion of a legally protected interest which is (a) concrete and particularized; (b) actual or imminent, not conjectural or hypothetical.'"  *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (quoting *Lujan*, 504 U.S. at 560).

Defendants contend that plaintiffs do not allege that they have suffered a concrete injury.  Specifically, defendants point to the fact that the complaint "merely alleges that each plaintiff has suffered 'disparage[ment] of . . . [his or her] qualifications for employment.'"  (Def. Mem. at 9).  They contend that the complaint does not allege that any plaintiff's ability to earn a living as a commercial motor-vehicle operator have actually been impaired, or that the PSP program actually sent any information to plaintiffs' prospective employers.

The complaint alleges that "[t]he intentional and willful disparagement of driver qualifications violates the rights of commercial motor vehicle drivers under the Privacy Act.  Such disparagement has a negative economic or pecuniary impact on [p]laintiff [d]rivers and others similarly situated."  (Compl. ¶ 49).  The complaint further alleges that "[a]ccording to informal surveys of motor carriers conducted by FMCSA, reports of driver-related safety violations have a negative impact on the ability of individual driver candidates to command compensation and benefits when they are hired."  (*Id.* ¶ 50).  It also alleges that "[t]he status of a

driver's PSP report also has an influence on the willingness and ability of individual commercial motor vehicle drivers to seek out better employment opportunities with motor carriers. Individuals with reports of driver-related safety violations on their PSPs are discouraged from seeking out better employment opportunities." (*Id.* ¶ 51).  According to the complaint, "[t]he employment prospects of [p]laintiff [d]rivers and others similarly situated have been diminished and they have been economically harmed by the actions of FMCSA *in unlawfully disseminating* driver safety records not authorized by statute for dissemination under the PSP program." (*Id.* ¶ 52) (emphasis added).

The complaint thus alleges (1) that the FMCSA had no authority to disseminate certain records through the PSP, (2) that the records in the PSP have been impermissibly disseminated, and (3) that the dissemination of the records has disparaged the qualifications of plaintiffs, causing them to suffer negative economic or pecuniary impact.  "[A]n individual subjected to an adverse effect has injury enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act." *Doe v. Chao*, 540 U.S. 614, 624-25 (2004).  At the pleading stage, the complaint adequately alleges an adverse effect sufficient to meet the constitutional standing requirements. *See id.*[4]  Whether the complaint adequately alleges an injury sufficient to state a claim under the Privacy Act is a different question, which the Court does not reach.

### B.    Whether the Complaint Alleges a Violation of Privacy Act

As noted. § 31150 identifies three types of reports in the MCMIS database that the FMCSA is required to make available for pre-employment screening purposes through an

---

[4] The complaint also appears to allege as an injury that plaintiffs have been forced to pay $10 in order to access their PSP reports.  However, that injury is not caused by the alleged violation of the Privacy Act, and therefore would not be redressable by a ruling in plaintiffs' favor.

electronic access system:  (1) commercial vehicle accident reports, (2) inspection reports "that

contain no driver-related safety violations," and (3) "serious driver-related safety violation

inspection reports."

Plaintiffs contend, among other things, that "[the] FMCSA exceeds its authority under

Section 31150 and violates the Privacy Act . . . when it releases to potential employers reports of

driver-related violations not determined by the Secretary to be reports of "serious" violations.

(Pl. Mem. at 1).  More particularly, they contend as follows:

> In 2005, Congress, for the first and only time, authorized FMCSA to disseminate
> to potential employers a limited subset of records of driver-related safety
> enforcement violations.  49 U.S.C. § 31150(a).  The purpose of this PSP program
> is to encourage motor carriers to avoid applicants with less favorable safety
> records when hiring drivers.  The wisdom of this approach to improving highway
> safety is not an issue here.  Congress has approved this approach.  In doing so,
> however, Congress placed clear and unambiguous limitations on FMCSA's
> authority.  The statute provides that access to such information under the PSP
> program "shall be designed to assist the motor carrier industry in assessing an
> individual operator's crash and serious safety violation inspection history as a
> preemployment condition."  *Id.* at (c).  When FMCSA operates beyond its
> statutory authority by disseminating records other than crash records or records of
> serious driver related violations, its actions are neither relevant nor necessary to
> accomplish the goals established in Section 31150(c).  Such actions violate the
> Privacy Act.

(*Id.* at 3-4).

Defendants contend that although § 31150 "identifies three types of MCMIS records that

the Agency is required to make available for pre-employment screening purposes through an

electronic access system, . . . the statute is silent on the agency's existing and long-standing

authority to provide safety records with a driver's consent."  (Def. Mem. at 11).  They contend

that "motor carrier employers, with a driver's written consent, have always been able to obtain a

driver's complete safety and inspection record from MCMIS under the Freedom of Information

Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, pursuant to regulations issued by the Secretary

pursuant to these federal laws." (*Id.* at 12).  They further contend that § 31150 "facilitated such

pre-employment screening by establishing a more reliable and expeditious means of conducting

background investigations, albeit one that is voluntary." (*Id.* at 13).  According to defendants,

the "FMCSA interpreted Congress' intent to facilitate informed hiring decisions . . . as adding to,

rather than limiting, the Agency's existing statutory authority to release driver safety

information." (*Id.*).  Thus, according to defendants, although § 31150 "mandates that the

Secretary afford access to potential employers for serious violations . . . , nothing in [§] 31150

purports to limit the Secretary's existing authority and exercise of discretion to provide more

complete driver safety records with the potential employee's written consent and in accordance

with Federal laws." (*Id.* at 14).  And because of § 31150's "silence and resulting ambiguity

concerning whether it provided a floor or a ceiling for the types of information that could be

provided, FMCSA was justified in interpreting the congressional mandate to allow it to continue

to provide comprehensive safety records for pre-employment purposes with the driver's consent

and in compliance with existing Federal laws." (*Id.* at 14-15).  Because plaintiffs consented in

writing to the release of all information contained in the PSP reports at issue, defendants contend

that there could not be a Privacy Act violation.  Finally, they contend that their interpretation of

§ 31150 should be accorded *Chevron* deference.  *See Chevron U.S.A., Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837, 842 (1984).

In short, according to defendants, § 31150 sets a floor: the FMSCA *must* release

the three identified categories of reports, but *may* release additional information

(including inspection reports that contain non-serious driver-related safety violations).

According to plaintiffs, the FMSCA *must* release the three identified categories of

reports, but *may not* release additional information (and, specifically, may not release

inspection reports that contain non-serious driver-related safety violations).

## 1.        Whether the Statute Is Ambiguous

There does not appear to be a dispute that defendants have the authority to create the

MCMIS database and keep "information on commercial truck drivers' safety records, such as

accident reports and other safety violations."  *Weaver*, 744 F.3d at 143 (D.C. Cir. 2014); *see* 49

U.S.C. § 31106.  Prior to the enactment of § 31150 in 2005, the FMCSA had the authority under

the Privacy Act to release safety-related information from the MCMIS system to any prospective

employer with the consent of the prospective driver-employee.  The prospective driver-employee

would have been an "individual to whom the record pertains" who could consent to the release.

*See* 5 U.S.C. § 552a(b).[5]  Although the parties dispute whether, prior to the enactment of §

31150, the FMCSA also had authority to release safety-related information under the "routine

use" prong of the Privacy Act, that dispute need not be resolved.[6]

Thus, under the Privacy Act, prior to 2005 the FCMSA could disclose safety-related

information to prospective employers concerning a driver with the consent of the driver.

Congress then enacted § 31150.  That statute requires the release of certain safety-related

information to prospective employers concerning a driver, but only if the driver consents.  *See* 49

U.S.C. § 31150(b)(2) (the FMCSA must ensure that a prospective employer "not conduct a [pre-

employment] screening without the operator-applicant's consent").  In other words, disclosure

with the driver's consent was permitted under the Privacy Act; § 31150 likewise requires consent

---

[5] Defendants also contend that it could have released the information pursuant to a FOIA request.  Because the parties have not addressed the issue at any length, and because it does not appear necessary to address the relationship of FOIA and § 31150 to render a decision, the Court will only address the Privacy Act issue.

[6] Plaintiffs contend that defendants could not have previously disseminated MCMIS information under the "routine use" exception because the FMCSA cites to no relevant published "systems of records notice" under 5 U.S.C. § 552a(e)(3) or "routine use" under 5 U.S.C. § 552a(e)(3)(c).

as a condition of disclosure.[7]

The next question is what Congress intended to accomplish by enacting § 31150. Clearly, it did not intend to permit the disclosure of some new category of information, or disclosure to some new type of person, that the law had previously prohibited.  Put another way, the statute does not grant new authority to the FMCSA to disclose information that could not have been disclosed prior to 2005, even with the driver's consent.

Instead, the purpose of the statute appears to be to *require* the FMCSA to allow prospective employers "electronic access" to certain information in the MCMIS database.  *See* 49 U.S.C. § 31150(a) ("The Secretary of Transportation *shall* provide persons . . . electronic access to the following reports . . .") (emphasis added).  Presumably, requiring the FMCSA to create a system of electronic access was intended primarily to benefit the employer; it is surely faster than obtaining paper copies, and (particularly with the mandated requirement to permit an opportunity for corrections), produces more accurate information.  Indeed, the statute expressly states that "[t]he process for providing access to [MCMIS] *shall be designed to assist the motor carrier industry* in assessing an individual operator's crash and serious safety violation inspection history as a preemployment condition."  *Id.* § 31150(c) (emphasis added).

Congress also included certain protections for the drivers, as set forth in the four "conditions on providing access" in § 31150(b) (requiring compliance with the Fair Credit Reporting Act and other federal law, requiring driver consent, prohibiting further disclosure, and providing a procedure for corrections).  One of the conditions is that the FMCSA provide an opportunity to the driver to correct any inaccurate information.  § 31150(b)(4).  And one of those

---

[7] Arguably, the Court could simply stop there.  If the Privacy Act permits disclosure of information with the driver's consent, and if the program challenged here does not permit disclosure without the driver's consent, it is by no means clear how the challenged program could violate the Privacy Act.  Nonetheless, the Court will proceed with an analysis of § 31150.

conditions is that the driver consent in writing to the disclosure.  *Id.* § 31150(b)(2).

Prospective employers are therefore not obtaining new, formerly-off-limits information (they could have obtained the information anyway), nor are they able to obtain information surreptitiously (the driver's consent is required).  The question then becomes whether the three identified categories of reports that "shall" be subject to electronic access are intended to be a floor ("you must, at a minimum, provide these reports") or a ceiling (or, more accurately, a ceiling and a floor) ("you must provide these reports, and you may not provide any other information").

As noted, § 31150(a) requires that employers have access to three categories of information, two of which are "inspection reports that contain no driver-related safety violations" and "serious driver-related safety violation inspection reports."  Thus, at least one category of inspection reports—those that contain non-serious driver-related safety violations—is not covered by the statute.

Did Congress intend to *prohibit* the release of that additional information, even with the driver's consent?  If so, it chose an odd way of expressing its intent.  The statute contains no clear language prohibiting or limiting the release of those reports.  Such language would have been easy enough to draft; indeed, the statute itself contains other language expressly limiting the release of certain information.  *See* § 31150(b)(2) (providing that the agency must "ensure that any information that is released to [a prospective employer] *will not be released to* any person or entity" other than the employer or the driver) (emphasis added).  And the statutory backdrop against which § 31150 was enacted—the Privacy Act—permits the release of virtually any such information with the driver's consent.[8]

---

[8] That interpretation could also produce arguably illogical results.  For example, a prospective employer could have access to a report that a vehicle was overweight, with no other reported violations.  § 31150(a)(2).  It

Did Congress intend to *require* that certain minimum information be made available electronically, but to *permit* the release of additional information?  Again, it did not clearly say so.  Again, it would have been easy to draft such language had that been the clear intention of Congress; for example, the first sentence of the statute could have provided that the FMCSA "shall provide persons . . . electronic access to *at least* the following reports contained in the [MCMIS]: . . ."

Under the circumstances, the Court concludes that the statute is susceptible of at least two rational interpretations.  It is therefore ambiguous, and the remaining question is whether the agency's construction of the statute is entitled to deference.

## 2.      Whether FMCSA's Interpretation Is Entitled to *Chevron* Deference

In *Chevron*, 467 U.S. at 842.  In *Chevron*, the Supreme Court established a two-step analysis for reviewing an agency's construction of a statute that it administers.  *Id.* at 842-43. The analysis begins with "whether Congress has directly spoken to the precise question at issue." If Congress's intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842-43.  If Congress has not expressed its intent unambiguously, or if Congress has left a gap for the agency to fill, the agency's interpretation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute."  *Id.* at 843-44; *see also Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239 (2004).  Under the second step, the agency's construction is accorded substantial deference.  *Chevron*, 467 U.S. at 844; *see also United States v. Mead Corp.*, 533 U.S. 218, 227-

---

could also have access to a report that a vehicle was overweight and that the driver was intoxicated (a "serious" violation).  *See* § 31150(a)(3).  But it would not have access to a report that a vehicle was overweight *and* that the driver was speeding (a "non-serious" violation).  In other words, the employer could gain access to the vehicle violation report *only* if it did not contain the purportedly prohibited non-serious driver information.  Of course, statutes are sometimes illogical, and the courts are not empowered to overlook clear statutory language simply to reach a more coherent result.

28 (2001) ("'considerable weight should be accorded to executive department's construction of a statutory scheme it is entrusted to administer'") (internal citations omitted).  This Court should not simply substitute its judgment for that of the agency.  *See Mead*, 533 U.S. at 229 ("a reviewing court has no business rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise").

The first question under *Chevron* is whether Congress has directly spoken to "the precise question at issue."  Again, the precise question is whether Congress intended to limit the authority of the FMCSA to disclose certain types of records from the MCMIS database, or only to ensure that certain types of records are made available in electronic form.  The statute appears to be directly on point, but as noted, Congress has not expressed its intent unambiguously.

The question then becomes whether the agency interpretation is entitled to deference— that is, whether the agency interpretation is arbitrary, capricious, or manifestly contrary to the statute.  Certainly the FMCSA's interpretation of § 31150 is not manifestly contrary to the wording or purpose of the statute, at least as Congress has drafted it.  Nor is it arbitrary or capricious.  While a contrary reading is entirely plausible, the construction adopted by the agency is rational and coherent, and in keeping with its statutory authority to promote highway safety.  Prospective employers will have access to a variety of driver safety information, even violations that do not rise to the level of "serious."  It is also in harmony with the requirements of the Privacy Act, which permits the disclosure of a record when "the individual to whom the record pertains" gives his or her consent.  *See* 5 U.S.C. § 552a(b).  Whether the same result would occur if the FMCSA were to release information without the consent of the affected drivers, as "routine use" or otherwise, is a decision that the Court does not reach.

In summary, defendants' interpretation of 49 U.S.C. § 31150—that it does not limit its authority to disclose inspection reports from the MCMIS database concerning non-serious driver-related safety violations—is a reasonable and permissible construction of the statute that is entitled to deference under *Chevron*.  Accordingly, defendants did not violate the requirements of § 31150, nor the requirements of the Privacy Act, the complaint fails to state a claim upon which relief can be granted.

**IV.**    **Conclusion**

For the foregoing reasons, defendants' motion to dismiss is GRANTED.

**So Ordered.**


/s/_____
F. Dennis Saylor IV
Dated: September 30, 2015                    United States District Judge